Bruce Lee SIEVERS *v.* CITY OF FORT SMITH

94-958                                                        894 S.W.2d 940

Supreme Court of Arkansas
Opinion delivered March 27, 1995

*Sam Sexton. III*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Bruce Lee Sievers was found guilty in Ft. Smith Municipal Court of driving with a suspended driver's license. At the time, he had a valid Arkansas driver's license but a suspended Oklahoma driver's license. He appealed to Sebastian County Circuit Court, and the municipal court judgment was affirmed. He has two points on appeal from the circuit court judgment. He first argues that he did not waive his right to a jury trial. The State admits error on this point and concedes that the matter should be reversed and remanded for a jury trial. We agree that the failure to provide a jury trial was error. *See* Ark. R. Crim. P. 31.2; *Winkle* v. *State*, 310 Ark. 713, 841 S.W.2d 589 (1992). Sievers also contends that the circuit court erred in not dismissing the charge and in entering a judgment of conviction based on a suspended license in Oklahoma because the Oklahoma suspension was contrary to Arkansas law. We agree with Sievers that a dismissal was appropriate under these facts, and we reverse and dismiss.

On November 7, 1993, Sievers was arrested for driving with a suspended license. At the bench trial in circuit court, Arkansas State Police Sergeant Ron Lemons testified that on that date he saw Sievers driving his car above the 55 mph speed limit. Due to other traffic on the roadway, he was unable to check Sievers's speed with his radar. He radioed State Trooper Michael Springer to "pace" Sievers and to stop him. Sergeant Lemons further advised Trooper Springer that Sievers was known to him as Jed Stewart Lineberry and that he had a suspended license in Oklahoma under one or both names. Sergeant Lemons added that he had stopped Sievers in February of 1993 on suspicion of DWI. He said that at that time Sievers did not have an Arkansas driver's license and that his Oklahoma license was shown as suspended. He testified that Sievers was again stopped in September of 1993 for reckless driving and that he had a valid Arkansas driver's license on that occasion. The status of his Oklahoma license was not checked in connection with the September stop.

Trooper Michael Springer testified next. He stated that he

stopped Sievers on November 7, 1993, when he was advised by Sergeant Lemons that Sievers was speeding and driving on a suspended Oklahoma license. He testified that after he stopped Sievers, he ascertained that his Oklahoma driver's license privileges had been suspended. He stated that Sievers did have a current and valid Arkansas driver's license. At that point the City introduced into evidence a certified copy of Sievers's Arkansas driver's license application dated March 10, 1993. On that application Sievers signed the following oath:

> OATH. This is to certify that all information on this application is true and correct and that my driving privilege is not suspended or revoked in this state or any other state nor do I hold a driver's license from any state other than Arkansas.

The application also requested the following information to which Sievers replied:

> Have you ever been licensed in any other state or country. <u>Yes</u>.

> If yes, where: <u>OK</u>.

He did not answer the question about whether his driver's license had ever been suspended or revoked in another state. The record does not show that he was ever charged with perjury in obtaining his Arkansas license. *See* Ark. Code Ann. § 27-16-306 (1987).

Trooper Springer testified that following the stop he checked with the Oklahoma Department of Public Safety for the driving record of Bruce Lee Sievers and Jed Stewart Lineberry. On November 15, 1993, he received documentation from the Oklahoma Department showing the current status of Jed Stewart Lineberry's license as "Driver Improvement Suspension." This document gave an expiration date of March 31, 1985. Another document from Oklahoma showed no traffic violations, accidents, or departmental actions of record after June 25, 1983. An order of suspension dated June 25, 1983, was also introduced into evidence by the City. That order notified Jed Stewart Lineberry that his driving privileges would be terminated effective July 25, 1983, and that he would be eligible for reinstatement six months from the date his license was surrendered.

He was also notified that a $25.00 reinstatement fee would be charged.

The state trooper then identified an Oklahoma traffic record on Bruce Lee Sievers which stated that his Oklahoma driver's license had been suspended on September 21, 1984. That driver's license had been used as bail and surrendered on August 27, 1984, for failure to appear. The record indicated an expiration date on the license as 00/00/00. Sievers was notified by mail on September 20, 1984, that his Oklahoma driver's license had been suspended effective September 21, 1984. Trooper Springer acknowledged that the points listed against Sievers/Lineberry on the Oklahoma records would have been over ten years old at the time of the traffic stop on November 7, 1993, and "too old to count against him" in Arkansas.

At the conclusion of the hearing, Sievers moved to dismiss the charge on several grounds, including the fact that there was no evidence of a valid suspension under Arkansas law. The court denied the motion and found Sievers guilty of driving on a suspended license. In doing so the court said:

> I don't think there's any question as to what the police officers have testified to and the documentation that they have provided to the Court here, that Mr. Sievers or Mr. Lineberry was driving on a suspended Oklahoma license. He got an Arkansas license whenever (sic) he wasn't entitled to it. Probably it wouldn't be very hard for him to clear up the Oklahoma business, since it's so old, but he just never did do it.

The court fined Sievers $100 and assessed $62.25 in costs.

Sievers contends on appeal that the trial court erred in denying his motion to dismiss. The statute making it a misdemeanor to drive on a suspended nonresident license provided at the time:

> Any person whose operator's or chauffeur's license or driving privilege as a nonresident has been cancelled, suspended, or revoked *as provided in this act* and who drives any motor vehicle upon the highways of this state while such license or privilege is cancelled, suspended, or revoked is guilty of a misdemeanor;

Ark. Code Ann. § 27-16-303(a)(1) (1987).[1] (Emphasis ours.) The term "suspend" as used in this statute means "to temporarily withdraw, by formal action, a driver's license or privilege to operate a motor vehicle on public highways, which shall be for a period specifically designated by the suspending authority." Ark. Code Ann. § 27-16-206(a) (1987). Suspensions in Arkansas may not exceed a period of one year. Ark. Code Ann. § 27-16-912 (1987).

A suspension that continues for nine or ten years is not temporary under anyone's definition and certainly exceeds the one-year limitation set out under § 27-16-912. The statute under which Sievers was cited requires that the suspension in the foreign state be in accordance with Arkansas law. Ark. Code Ann. § 27-16-303(a)(1) (1987). The prolonged suspension manifestly failed that test. The circuit court believed that it was Sievers's obligation to clear up his record in Oklahoma. However, the lengthy passage of time might also have led Sievers to believe that either his suspension in Oklahoma had expired or his Oklahoma license had expired. Certainly, the Oklahoma records speak in terms of some expiration date.

Suspensions in one state have the effect of precluding a driver from obtaining a license in other states. That is what happens in Arkansas, and recognition of foreign state suspensions is appropriate so long as those suspensions are effective for a fixed period of time. In Arkansas the suspension period may not exceed one year. Foreign state suspensions are not appropriate, though, when they exist for indefinite periods without explanation or reason, and that is the situation in the case before us. We consider it to be the foreign state's obligation to fix time periods for suspensions and expiration dates. Without any action to reinstate on the part of Sievers, at some point during the ten-year period the Oklahoma suspension should have terminated and the license should have expired or been revoked. That did not happen. Accordingly, we will not affirm a misdemeanor conviction based on an Oklahoma suspension that appears to have no end or rationale to it.

---

[1]The section was amended by Act 445 of 1993, which became effective January 1, 1994. The amendment changed "operator's or chauffeur's license" to "driver's license."

Reversed and dismissed.

DUDLEY, NEWBERN, and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. In dismissing this case, the majority court accepts, wholesale, appellant's version of the facts and his misstatements of the law. While this case must be reversed on the jury issue, the court is clearly wrong on the facts and law when dismissing it.

Appellant was convicted of violating Ark. Code Ann. § 27-16-303(a)(1) (Repl. 1994), which provides that "any person whose driving privilege as a nonresident has been suspended as provided in this act and who drives any motor vehicle upon the highways of this state while such privilege is suspended is guilty of a misdemeanor." The issue in this appeal is whether the record shows that, when appellant was stopped and charged under § 27-16-303(a)(1), he was driving on Arkansas highways while he had a suspended nonresident driver's license. The answer is yes.

On November 7, 1993, the officer stopped the appellant on Interstate Highway 540 in Ft. Smith. Appellant's vehicle was a red and white Corvette bearing Oklahoma tags. The officer checked appellant's license and found his Oklahoma driver's license had been suspended. Based on these facts, the officer properly charged appellant with violating § 27-16-303(a)(1). At trial, the officer identified an Oklahoma Department of Public Safety document dated November 15, 1993, reflecting appellant's "current license status" — driver improvement suspension. Under Oklahoma law, the Public Safety Department may temporarily suspend a driver's license, but the suspension cannot exceed one year. Okla. Stat. Ann. §§ 1-173(1988) and § 6-206 (1988); see also Okla. Stat. Ann. § 6-208 (1988). In sum, the facts and law clearly support the trial court's decision that appellant was in violation of § 27-16-303(a)(1).

The majority opinion tracts and is misled by appellant's argument and discussion, bearing on appellant's earlier Oklahoma driver's license suspensions in 1983 and 1984. These older suspensions are mere red herrings. The opinion also follows appellant's legal argument which erroneously suggests Oklahoma's law is different from Arkansas's, which provides only for temporary suspended licenses not to exceed one year. As discussed above, Oklahoma law is the same.

This court's duty on review is to view the facts in the appellee's favor and determine if the evidence supports the trial court's holding. The record clearly does. The case should be remanded for a new trial.

DUDLEY and NEWBERN, JJ., join this dissent.